# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

HEATHER POWELL, individually and as )
mother, next friend and guardian of )
Elizabeth Kiley Eaton, )
)
              Plaintiff, )
)
v. )     Case No. CIV-18-294-D
)
BOARD OF COUNTY COMMISSIONERS )
OF OKLAHOMA COUNTY, )
OKLAHOMA COUNTY DETENTION )
CENTER, )
SHERIFF JOHN WHETSEL, )
OKLAHOMA COUNTY SHERIFF'S )
DEPARTMENT, )
CORRECTIONAL HEALTHCARE )
MANAGEMENT, INC., )
ARMOR CORRECTIONAL HEALTH )
SERVICES, INC., and )
JOHN DOE 1-10, )
)
             Defendants. )

## ORDER

Before the Court is the Motion to Dismiss the Amended Complaint filed by Defendants Oklahoma County Detention Center ("OCDC") and Oklahoma County Sheriff's Department ("Sheriff's Department") [Doc. No. 23]. Plaintiff filed a response in opposition [Doc. No. 24]. The matter is fully briefed and at issue.

## BACKGROUND

This case arises out of the suicide attempt of Elizabeth Kiley Eaton while she was a pretrial detainee at the OCDC on June 29, 2016. Because of the suicide attempt, Ms. Eaton was rendered comatose and remains in a vegetative state. Plaintiff Heather Powell – as

Eaton's mother, next friend, and duly appointed guardian and as an individual – asserts claims against the Board of County Commissioners of Oklahoma County ("BOCC"), the OCDC, Sheriff John Whetsel ("Whetsel"), the Sheriff's Department, Correctional Healthcare Management, Inc. ("CHM"), Armor Correctional Health Services, Inc. ("Armor"), and John Doe 1-10 for negligence and for alleged violations of Ms. Eaton's constitutional rights.

To summarize, the Amended Complaint [Doc. No. 18] alleges:

- Ms. Eaton was arrested on April 30, 2016, and taken to the OCDC, where she remained until her suicide attempt on June 29, 2016. She was 21 years old and charged with violating the terms and conditions of her deferred sentence for second-degree burglary (felony) and two misdemeanor offenses.

- When Ms. Eaton was booked in, she showed signs of depression and despondency. A mental evaluation was scheduled, but according to OCDC records, Ms. Eaton did not show for her appointment. No follow-up attempts were made to diagnose and treat her mental illness.

- Prior to Ms. Eaton's jail stay, she had been diagnosed with bipolar disorder and borderline personality disorder. She had a long history of mental illness, and as an adolescent had been a patient in several behavioral institutions. Ms. Eaton told Plaintiff that the OCDC had "refused to put her back on Risperdal." [Doc. No. 18 at ¶ 12].

- Ms. Eaton's cellmate recalled Ms. Eaton waking up, crying, and saying she "wanted to die." *Id.* Ms. Eaton's cellmate reported to jailers that Ms. Eaton was "hearing voices" and had said she "couldn't take it anymore." *Id.* at ¶ 20. In a recorded jail call from Ms. Eaton to her mother, Ms. Eaton said she was going to kill herself. Ms. Eaton sent Plaintiff a letter from the jail in which she stated that she was crying and was "emotional." *Id.* at ¶ 12.

- Ms. Eaton's arresting officer told Plaintiff that Ms. Eaton seemed as if she did not care about anything.

- On June 29, 2016, Ms. Eaton attempted to kill herself by hanging. She tied a sheet or pillow case to a grate above the sink in her jail cell and jumped off the sink.

Because of the suicide attempt, Ms. Eaton was rendered comatose and remains in a vegetative state.

- The OCDC was aware of Ms. Eaton's mental condition and did nothing to prevent or prepare for a possible suicide attempt by Ms. Eaton. Medical personnel at the jail never assessed Ms. Eaton to determine if she posed a danger to herself.

- Armor and CHM had a contract with Oklahoma County to provide medical services to inmates at the OCDC. Alternatively, OCDC staff informed Armor or CHM employees of Ms. Eaton's mental condition, and Armor or CHM failed to provide Ms. Eaton with proper medical care.

- Whetsel knew that the OCDC was understaffed and under-supervised. He had requested multiple funding increases, which were rejected by the BOCC. This lack of funding caused or contributed to the unconstitutional practices at the OCDC.

- At the time of Ms. Eaton's admission, the OCDC had more than 2,000 detainees, which was nearly double its rated capacity. The large number of detainees, coupled with the awkward physical layout of the jail cells, made adequate supervision of detainees "virtually non-existent." *Id.* at ¶ 27. At the time of the incident, the OCDC was not adequately staffed to maintain necessary supervision or to meet the basic medical needs of inmates.

- Due to overcrowding, the OCDC did not have sufficient jail cells to match the classification level of the detainees according to accepted standards of correctional practice.

- The OCDC did not adequately screen detainees for serious medical problems, did not adequately provide detainees access to medical care, and the medical care that was provided was "superficial and meaningless." *Id.* at ¶ 30.

- The United States Department of Justice ("DOJ") conducted inspections of the OCDC in April 2007. In its letter to the BOCC, the DOJ noted that certain conditions at the OCDC violated the constitutional rights of detainees. These constitutional violations continued through 2016. In 2009, the BOCC entered a memorandum of understanding with the DOJ. The BOCC agreed to implement mental health policies and procedures and to maintain sufficient staff. The BOCC agreed to screen all written requests for mental health care within 24 hours and to see patients within the next 72 hours or sooner.

- Before Ms. Eaton's suicide attempt, a male inmate had used a ventilation grill to hang himself. The DOJ specifically criticized the OCDC concerning this safety issue: "cells have ventilation grills and other fixtures that have not been modified to

minimize the risk that they may [be] used to facilitate a suicide attempt." *Id.* at ¶ 40.

**STANDARD OF DECISION**

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The "plausibility standard" announced in *Twombly* and *Iqbal* is not a "heightened standard" of pleading, but rather a "refined standard." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (*citing Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011)). Under the "refined standard," plausibility refers "to the scope of the allegations in the complaint:  if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik*, 671 F.3d at 1191; *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (*quoting Twombly*, 550 U.S. at 570).

Further, the Tenth Circuit has noted that "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context." *Khalik*, 671 F.3d at 1191 (*quoting Kansas Penn Gaming*, 656 F.3d at 1215). "Thus, [it has] concluded the *Twombly/Iqbal* standard is 'a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions

or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" *Id*. (*quoting Robbins*, 519 F.3d at 1247).

"In other words, Rule 8(a)(2) still lives. There is no indication the Supreme Court intended a return to the more stringent pre-Rule 8 pleading requirements." *Id.* It remains true that "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*quoting Twombly*, 550 U.S. at 555); *see also al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009) ("*Twombly* and *Iqbal* do not require that the complaint include all facts necessary to carry the plaintiff's burden.").

Finally, "[w]hile the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in [its] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik*, 671 F.3d at 1192 (*citing Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Sanchez v. Hartley*, 810 F.3d 750, 756 (10th Cir. 2016) (*citing Twombly*, 550 U.S. at 556).

## DISCUSSION

The OCDC and the Sheriff's Department move to dismiss Plaintiff's Amended Complaint asserting that neither entity has the legal capacity to be sued or has a legal identity separate from Oklahoma County. Plaintiff does not address this argument in her response brief.

## A.    Federal Constitutional Claims

Rule 17(b) of the Federal Rules of Civil Procedure provides that a non-corporate entity's capacity to be sued is determined by the law of the state in which the district court is located. FED. R. CIV. P. 17(b)(3). In Oklahoma, each organized county can sue and be sued. OKLA. STAT. tit. 19, § 1(1). The authority of each county is exercised by its board of county commissioners, and a lawsuit brought against a county must be filed against the board of county commissioners of that relevant county. OKLA. STAT. tit. 19, §§ 3, 4. Because the OCDC and the Sheriff's Department do not have legal identities separate from that of Oklahoma County, they are not suable entities and are not proper defendants in a civil rights action. *See Lindsey v. Thomson*, 275 Fed. Appx. 744, 747 (10th Cir. Sept. 10, 2007) (unpublished)[1] (affirming dismissal of § 1983 claims against police departments and a county sheriff's department, noting that defendants were "not legally suable entities"); *Reid v. Hamby*, No. 95-7142, 1997 WL 537909, at *6 (10th Cir. Sept. 2, 1997) (unpublished)[2] (holding that "an Oklahoma 'sheriff's department' is not a proper entity for purposes of a § 1983 action"); *Aston v. Cunningham*, No. 99-4156, 2000 WL 796086, at *4 n. 3 (10th Cir. June 21, 2000) (unpublished)[3] (affirming dismissal of a county detention facility on the basis that "a detention facility is not a person or legally created entity capable of being sued").

---

[1] Unpublished opinion cited pursuant to FED. R. APP. P. 32.1(a) and 10TH CIR. R. 32.1.

[2] Unpublished opinion cited pursuant to FED. R. APP. P. 32.1(a) and 10TH CIR. R. 32.1.

[3] Unpublished opinion cited pursuant to FED. R. APP. P. 32.1(a) and 10TH CIR. R. 32.1.

Accordingly, Plaintiff's federal constitutional claims against the OCDC and the Sheriff's Department should be dismissed for failure to state a claim upon which relief may be granted.

### B.     Negligence Claims

Plaintiff's negligence claims are subject to the Oklahoma Governmental Tort Claims Act, OKLA. STAT. tit. 51, § 151 *et seq.* ("OGTCA"). The OGTCA "is the exclusive remedy by which an injured plaintiff may recover against a governmental entity for its negligence." *Speight v. Presley*, 203 P.3d 173, 176 (Okla. 2008); OKLA. STAT. tit. 51, § 152.1(A) (all tort claims against the state or its political subdivisions must be brought pursuant to the OGTCA). Neither a county detention center nor a sheriff's department are included in the Act's statutory definition of a "political subdivision." OKLA. STAT. tit. 51, § 152(11).

Independent of the OGTCA is the statute cited *supra*, OKLA. STAT. tit. 19, § 4, which provides that "[i]n all suits or proceedings by or against a county, the name in which a county shall be sued or be sued shall be, 'Board of County Commissioners of the [relevant county].'" This statute is a rule of general applicability and is not specific to the OGTCA. Further, there is no ambiguity about the meaning of OKLA. STAT. tit. 19, § 4. "All suits" cannot be construed as having any meaning other than the plain language indicates. *See, e.g., Green Constr. Co. v. Okla. County*, 50 P.2d 625, 627 (Okla. 1935) ("This statute is mandatory, and requires that all suits prosecuted by or against a county be prosecuted in the name of the board of county commissioners of the county of interest."); OKLA. STAT.

tit. 19, § 1 (explaining the powers of Oklahoma counties, including their ability to sue and be sued).

Accordingly, Plaintiff cannot sue the OCDC or the Sheriff's Department under the OGTCA.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss the Amended Complaint filed by Defendants Oklahoma County Detention Center and Oklahoma County Sheriff's Department [Doc. No. 23] is GRANTED. The Oklahoma County Detention Center and the Oklahoma County Sheriff's Department are terminated as parties to this action, and Plaintiff's claims against them are dismissed with prejudice.

**IT IS SO ORDERED** this 17ᵗʰ day of May 2019.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE