# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

HEATHER POWELL, individually and as )
mother, next friend and guardian of )
Elizabeth Kiley Eaton, )
                 )
               Plaintiff, )
                 )
v.                         )      Case No. CIV-18-294-D
                 )
BOARD OF COUNTY COMMISSIONERS )
OF OKLAHOMA COUNTY, )
OKLAHOMA COUNTY DETENTION )
CENTER, )
SHERIFF JOHN WHETSEL, )
OKLAHOMA COUNTY SHERIFF'S )
DEPARTMENT, )
CORRECTIONAL HEALTHCARE )
MANAGEMENT, INC., )
ARMOR CORRECTIONAL HEALTH )
SERVICES, INC., and )
JOHN DOE 1-10, )
                 )
              Defendants. )

## ORDER

Before the Court is the Motion to Dismiss Amended Complaint filed by Defendant

Board of County Commissioners of Oklahoma County ("BOCC") [Doc. No. 21]. Also

pending before the Court is the Motion to Dismiss Amended Complaint filed by Defendant

John Whetsel ("Whetsel") in his official capacity as Oklahoma County Sheriff [Doc. No.

22]. Plaintiff has timely responded to each motion [Doc. Nos. 25, 26], and the respective

movants have replied [Doc. No. 27]. Because the motions are based on the same legal issues, both are addressed in this Order.[1]

## BACKGROUND

This case arises out of the suicide attempt of Elizabeth Kiley Eaton while she was a pretrial detainee at the Oklahoma County Detention Center ("OCDC") on June 29, 2016. Because of the suicide attempt, Ms. Eaton was rendered comatose and remains in a vegetative state. Plaintiff Heather Powell – as Eaton's mother, next friend, and duly appointed guardian and as an individual – asserted claims against the BOCC, the OCDC, Whetsel, the Oklahoma County Sheriff's Department, Correctional Healthcare Management, Inc. ("CHM"), Armor Correctional Health Services, Inc. ("Armor"), and John Doe 1-10 for negligence and for alleged violations of Ms. Eaton's constitutional rights.

To summarize, the Amended Complaint [Doc. No. 18] alleges:

- Ms. Eaton was arrested on April 30, 2016, and taken to the OCDC, where she remained until her suicide attempt on June 29, 2016. She was 21 years old and charged with violating the terms and conditions of her deferred sentence for second-degree burglary (felony) and two misdemeanor offenses.

- When Ms. Eaton was booked in, she showed signs of depression and despondency. A mental evaluation was scheduled, but according to OCDC records, Ms. Eaton did not show for her appointment. No follow-up attempts were made to diagnose and treat her mental illness.

- Prior to Ms. Eaton's jail stay, she had been diagnosed with bipolar disorder and borderline personality disorder. She had a long history of mental illness, and as an adolescent had been a patient in several behavioral institutions. Ms. Eaton told

---

[1] A motion to dismiss was also filed by Defendants Oklahoma County Detention Center and Oklahoma County Sheriff's Department [Doc. No. 23]. That motion was addressed in a separate order.

Plaintiff that the OCDC had "refused to put her back on Risperdal." [Doc. No. 18 at ¶ 12].

- Ms. Eaton's cellmate recalled Ms. Eaton waking up, crying, and saying she "wanted to die." *Id.* Ms. Eaton's cellmate reported to jailers that Ms. Eaton was "hearing voices" and had said she "couldn't take it anymore." *Id.* at ¶ 20. In a recorded jail call from Ms. Eaton to her mother, Ms. Eaton said she was going to kill herself. Ms. Eaton sent Plaintiff a letter from the jail in which she stated that she was crying and was "emotional." *Id.* at ¶ 12.

- Ms. Eaton's arresting officer told Plaintiff that Ms. Eaton seemed as if she did not care about anything.

- On June 29, 2016, Ms. Eaton attempted to kill herself by hanging. She tied a sheet or pillow case to a grate above the sink in her jail cell and jumped off the sink. Because of the suicide attempt, Ms. Eaton was rendered comatose and remains in a vegetative state.

- The OCDC was aware of Ms. Eaton's mental condition and did nothing to prevent or prepare for a possible suicide attempt by Ms. Eaton. Medical personnel at the jail never assessed Ms. Eaton to determine if she posed a danger to herself.

- Armor and CHM had a contract with Oklahoma County to provide medical services to inmates at the OCDC. Alternatively, OCDC staff informed Armor or CHM employees of Ms. Eaton's mental condition, and Armor or CHM failed to provide Ms. Eaton with proper medical care.

- Whetsel knew that the OCDC was understaffed and under-supervised. He had requested multiple funding increases, which were rejected by the BOCC. This lack of funding caused or contributed to the unconstitutional practices at the OCDC.

- At the time of Ms. Eaton's admission, the OCDC had more than 2,000 detainees, which was nearly double its rated capacity. The large number of detainees, coupled with the awkward physical layout of the jail cells, made adequate supervision of detainees "virtually non-existent." *Id.* at ¶ 27. At the time of the incident, the OCDC was not adequately staffed to maintain necessary supervision or to meet the basic medical needs of inmates.

- Due to overcrowding, the OCDC did not have sufficient jail cells to match the classification level of the detainees according to accepted standards of correctional practice.

- The OCDC did not adequately screen detainees for serious medical problems, did not adequately provide detainees access to medical care, and the medical care that was provided was "superficial and meaningless." *Id*. at ¶ 30.

- The United States Department of Justice ("DOJ") conducted inspections of the OCDC in April 2007. In its letter to the BOCC, the DOJ noted that certain conditions at the OCDC violated the constitutional rights of detainees. These constitutional violations continued through 2016. In 2009, the BOCC entered a memorandum of understanding with the DOJ. The BOCC agreed to implement mental health policies and procedures and to maintain sufficient staff. The BOCC agreed to screen all written requests for mental health care within 24 hours and to see patients within the next 72 hours or sooner.

- Before Ms. Eaton's suicide attempt, a male inmate had used a ventilation grill to hang himself. The DOJ specifically criticized the OCDC concerning this safety issue: "cells have ventilation grills and other fixtures that have not been modified to minimize the risk that they may [be] used to facilitate a suicide attempt." *Id.* at ¶ 40.

- There have been "44 deaths in the recent past" at the OCDC. *Id.* at ¶ 30.

The BOCC and Whetsel move to dismiss under FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted. The BOCC also moves for dismissal pursuant to FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction.

## STANDARD OF DECISION

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The "plausibility standard" announced in *Twombly* and *Iqbal* is not a "heightened standard" of pleading, but

rather a "refined standard." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (*citing Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011)). Under the "refined standard," plausibility refers "to the scope of the allegations in the complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik*, 671 F.3d at 1191; *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (*quoting Twombly*, 550 U.S. at 570).

Further, the Tenth Circuit has noted that "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context." *Khalik*, 671 F.3d at 1191 (*quoting Kansas Penn Gaming*, 656 F.3d at 1215). "Thus, [it has] concluded the *Twombly/Iqbal* standard is 'a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" *Id.* (*quoting Robbins*, 519 F.3d at 1247).

"In other words, Rule 8(a)(2) still lives. There is no indication the Supreme Court intended a return to the more stringent pre-Rule 8 pleading requirements." *Id.* It remains true that "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*quoting Twombly*, 550 U.S. at 555); *see also al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009) ("*Twombly* and *Iqbal* do not require that the complaint include all facts necessary to carry the plaintiff's burden.").

Finally, "[w]hile the 12(b)(6) standard does not require that Plaintiff establish a

prima facie case in [its] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik*, 671 F.3d at 1192 (*citing Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Sanchez v. Hartley*, 810 F.3d 750, 756 (10th Cir. 2016) (*citing Twombly*, 550 U.S. at 556).

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction takes one of two forms: a facial or a factual attack. *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n. 4 (10th Cir. 2015). A facial attack questions the sufficiency of the complaint's allegations. *Id.* In reviewing a facial challenge, a district court must accept the allegations in the complaint as true. *Id.* However, in a factual attack, the moving party may go beyond the allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. *Id.* A district court may not presume the truthfulness of the complaint's factual allegations when reviewing a factual attack on subject matter jurisdiction. *Id.* Rather, a court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. *Id.*

## DISCUSSION

The BOCC and Whetsel move to dismiss Plaintiff's Amended Complaint asserting that Plaintiff has failed to state a claim upon which relief may be granted and that the Court lacks subject matter jurisdiction over Plaintiff's supplemental state law claims. Additionally, the BOCC contends that Plaintiff lacks Article III standing to sue. The Court will take up the issue of standing first.

### 1.     Standing

Although couched in terms of subject matter jurisdiction, the premise of the BOCC's argument is that Plaintiff's factual allegations are insufficient to state a civil rights action under 42 U.S.C. § 1983.  [Doc. No. 21 at 13-20].  Specifically, the BOCC argues that Eaton's injuries are not fairly traceable to any act or omission by the BOCC because it has no authority to act in operating the OCDC.  *Id.*  Federal courts have repeatedly cautioned against a procedure that would allow a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction to become an attack on the merits.  *See, e.g., Davis v. Wells Fargo*, 824 F.3d 333, 348 (3d Cir. 2016). Caution is necessary because the standards governing the two rules differ significantly, as Rule 12(b)(6) provides greater procedural and substantive protections for plaintiffs.  *Id.* at 348-349.

First, proceeding under Rule 12(b)(1) inverts the burden of persuasion.  *Id*. at 349. When presenting a Rule 12(b)(6) motion, the defendant bears the burden to show that the plaintiff has not stated a claim whereas under Rule 12(b)(1) the plaintiff must prove the Court has subject matter jurisdiction.  *Id.; see also United States ex rel. Hafter, D.O. Spectrum Emergency Care, Inc.,*190 F.3d 1156, 1160 (10th Cir. 1999) ("If jurisdiction is challenged, the burden is on the party claiming jurisdiction to show it by a preponderance of the evidence.") (citation omitted).

Second, the two rules approach the factual allegations in the complaint very differently.  *Davis*, 824 F.3d at 349.  Unlike Rule 12(b)(6), under which a defendant cannot contest the plaintiff's well-pled factual allegations, Rule 12(b)(1) allows a defendant to challenge the allegations in the complaint and submit evidence outside the complaint to

show that the court lacks jurisdiction. *Id.*; *see also Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). "Thus, improper consideration of a merits question under Rule 12(b)(1) significantly raises both the factual and legal burden on the plaintiff. Given the differences between the two rules, 'a plaintiff may be prejudiced if what is, in essence, a Rule 12(b)(6) challenge to the complaint is treated as a Rule 12(b)(1) motion.'" *Davis*, 824 F.3d at 349 (citation omitted).

"Rule 12(b)(6) – with its attendant procedural and substantive protections for plaintiffs – is the proper vehicle for the early testing of a plaintiff's claims." *Id.* The BOCC does not contend that Plaintiff is the wrong person to bring the claims. Rather, it argues that she has filed suit against the wrong party, and her claims are without merit because the BOCC has no authority to act in operating the OCDC. "That may be true …. But [the BOCC] may not short-circuit the usual process, flip the burden of persuasion, and permit itself to submit competing facts to support its argument." *Id.* Accordingly, the BOCC's motion to dismiss on this ground is denied.

**2. Sufficiency of the Amended Complaint**

*A. Redundancy of Claims*

The BOCC argues it should be dismissed from the suit because asserting claims against the BOCC and Whetsel in his official capacity is redundant and unnecessary. The Court agrees that such claims are duplicative and unnecessary; however, the Court finds that dismissal of Whetsel as a party is the proper remedy. These claims all amount to

actions against Oklahoma County and are permissible methods of pleading a *Monell*[2] claim. Although permissible under § 1983, such claims are duplicative and unnecessary given that Plaintiff has named the BOCC as a defendant. *See Kentucky v. Graham,* 473 U.S. 159, 166 (1985) ("an official capacity suit is, in all respects other than name, to be treated as a suit against the entity."); OKLA. STAT. tit. 19, § 4 (a suit against a county must be brought by naming the board of county commissioners of that county); *Martinez v. Beggs*, 563 F.3d 1082, 1091 (10th Cir. 2009) (bringing "a claim against [a sheriff] in his official capacity … is the same as bringing a suit against the county."). Accordingly, Plaintiff's claims against Whetsel[3] are dismissed.

### B. Constitutional Claims

Plaintiff asserts that Ms. Eaton's constitutional rights under the Fourth, Eighth, and Fourteenth Amendments were violated. As an initial matter, the Court notes that the Tenth Circuit has rejected the theory that jail suicide claims may be analyzed under the Fourth Amendment. *Barrie v. Grand County, Utah*, 119 F.3d 862, 866 (10th Cir. 1997). Rather, claims based on jail suicide (or attempted suicide) "are considered and treated as claims based on the failure of jail officials to provide medical care for those in their custody." *Id.*

---

[2] *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658 (1978).

[3] Whether an official has final policymaking authority for purposes of § 1983 is a question of state law. *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 786 (1997). Under Oklahoma law, the sheriff is the final policymaker regarding the county's jail. OKLA. STAT. tit. 19, § 513; OKLA. STAT. tit. 57, § 47; *see also Lopez v. LeMaster*, 172 F.3d 756, 763 (10th Cir. 1999). Thus, the BOCC may be liable for Whetsel's actions as a final policymaker regarding the OCDC.

(1)     Indifference to Medical Needs

Tenth Circuit law is clear that a pretrial detainee is entitled under the Due Process Clause of the Fourteenth Amendment "'to the degree of protection against denial of medical attention which applies to convicted inmates' under the Eighth Amendment." *Martinez*, 563 F.3d at 1088 (*quoting Garcia v. Salt Lake County*, 768 F.2d 303, 307 (10th Cir. 1985)).  To establish a violation under this standard, a plaintiff must show "deliberate indifference to serious medical needs." *Martinez*, 563 F.3d at 1088; *see also Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  "Deliberate indifference involves both an objective and a subjective component." *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) (internal quotation omitted); *Martinez*, 563 F.3d at 1088-1089.  The objective component is satisfied if the harm suffered is "'sufficiently serious.'" *Martinez*, 563 F.3d at 1088 (*quoting Mata v. Saiz*, 427 F.3d 745, 752-53 (10th Cir. 2005)).  The Tenth Circuit has held that the objective component is satisfied in the case of suicide because the harm suffered is "obviously" sufficiently serious. *Gaston v. Ploeger*, 229 Fed. Appx. 702, 710 (10th Cir. April 12, 2007) (unpublished)[4]; *see also Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006) ("it goes without saying that suicide is a serious harm").  Further, the BOCC has assumed "for the sake of argument that attempted suicide satisfies the objective component of the analysis." [Doc. No. 21 at 24].  Thus, the Court turns its analysis to the subjective component of the test.

"The subjective component is met if a prison official 'knows of and disregards an

---

[4] Unpublished opinion cited pursuant to FED. R. APP. P. 32.1(a) and 10TH CIR. R. 32.1.

excessive risk to inmate health or safety.'" *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (*quoting Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). A plaintiff must show (1) "actual knowledge of the specific risk of harm [to the detainee] … or that the risk was so substantial or pervasive that knowledge can be inferred"; (2) "fail[ure] to take reasonable measures to avert the harm"; and (3) that "failure to take such measures in light of [the] knowledge, actual or inferred, justifies liability for the attendant consequences of [the] conduct, even though unintended." *Estate of Hocker v. Walsh*, 22 F.3d 995, 1000 (10th Cir. 1994) (*quoting Berry v. City of Muskogee*, 900 F.2d 1489, 1498 (10th Cir. 1990)). The Amended Complaint contains no allegations that any staff member at the OCDC had knowledge of the specific risk that Ms. Eaton would attempt suicide.[5] For instance, Plaintiff does not allege that Ms. Eaton was suicidal prior to detention or that she had a mental health condition that increased the risk of suicide. According to OCDC records, Ms. Eaton did not report for her mental health evaluation appointment.

Further, Plaintiff does not allege any facts to suggest that the risk of attempted suicide was so substantial or pervasive that knowledge can be inferred. The allegation that Ms. Eaton showed signs of depression and despondency at book-in does not describe any condition that is unusual for a person who is being detained. Certainly, it falls short of describing facts that would put a person on notice that there was a substantial risk Ms. Eaton would attempt to harm herself. "[S]omething more than an inmate's gloomy affect

---

[5] "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.,* 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotations omitted).

is required to trigger a duty to inquire whether he is feeling suicidal." *Hott v. Hennepin County, Minn.*, 260 F.3d 901, 906 (8th Cir. 2001); *see also Estate of Novack v. County of Wood*, 226 F.3d 525, 530 (7th Cir. 2000) ("[S]trange behavior alone, without indications that the behavior has a substantial likelihood of taking a suicidal turn, is not sufficient to impute subjective knowledge of a high suicide risk to jail personnel."). Likewise, the reports of Ms. Eaton's cellmate to jailers that Ms. Eaton was "hearing voices" and had said she "couldn't take it anymore," alone do not reflect a substantial risk of suicide. In the same manner, Ms. Eaton's statements to her mother in a letter from the jail that she was crying and was "emotional" did not indicate that Ms. Eaton's behavior had taken a suicidal turn.

Finally, other than the fact that the phone call was recorded, there is no allegation that any staff at the OCDC was aware of Ms. Eaton's phone call to her mother in which she allegedly stated she was going to kill herself. Plaintiff does not allege that she or anyone else reported this phone call to anyone at the OCDC or that anyone at the OCDC was aware of, or had listened to, the phone call prior to Ms. Eaton attempting suicide.[6] *See, e.g., Gregoire v. Class*, 236 F.3d 413, 418 (8th Cir. 2000) (prison case manager who waited longer than half an hour to check on prisoner following a telephone call from the prisoner's ex-wife indicating that the prisoner had told her he planned to commit suicide was not "deliberately indifferent" to the prisoner's risk of suicide). If Plaintiff had alleged that an OCDC staff member had disregarded a report from Ms. Eaton's family alerting the staff

---

[6] The Amended Complaint does not indicate when this phone call occurred.

member to a suicide risk, such act may well have constituted deliberate indifference. *Id.* Here, however, none of those facts are alleged. Without more, Plaintiff has not alleged facts showing deliberate indifference on the part of anyone at the OCDC.

In support of her § 1983 claim, Plaintiff also alleges that "[n]o follow-up attempts were made to diagnose and treat [Ms. Eaton's] mental illness" after Ms. Eaton failed to report for her mental health evaluation. [Doc. No. 18 at ¶ 12]. Plaintiff further alleges that medical personnel at the OCDC never assessed or "adequately screened" Ms. Eaton to determine whether she posed a danger to herself. *Id.* at ¶¶ 19, 30. To the extent Plaintiff predicates her constitutional claim on the failure of the BOCC to have in place suicide screening or prevention protocols at the OCDC, no such right has been recognized to be clearly established. *See Taylor v. Barkes*, 135 S.Ct. 2042, 2044 (2015) ("No decision of this Court establishes a right to the proper implementation of adequate suicide prevention protocols. No decision of this Court even discusses suicide screening or prevention protocols."); *Cox v. Glanz*, 800 F.3d 1231, 1251 (10th Cir. 2015) (*Taylor* taught us that there was no clearly established right of a detainee to be adequately screened for suicide; the standard is whether a jail official possessed knowledge that a specific inmate presented a substantial risk of suicide). Knowledge that Ms. Eaton failed to report for a mental health evaluation appointment does not equate to knowledge that Ms. Eaton posed a substantial risk of suicide.

Additionally, Plaintiff alleges that Ms. Eaton was denied adequate medical care following her attempted suicide because the jailers' response time "was unreasonably long." [Doc. No. 18 at ¶ 44]. Plaintiff does not develop this assertion in her Amended

Complaint with any alleged facts to show deliberate indifference on the part of any staff at the OCDC.[7]  To satisfy the objective prong of a deliberate indifference claim premised on an alleged delay in medical care, "the [detainee] must show that the delay resulted in substantial harm." *Kikumura v. Osagie*, 461 F.3d 1269, 1292 (10th Cir. 2006) (internal quotations and citation omitted), *overruled on other grounds by Rachel v. Troutt*, Case No. 18-6053, 2019 WL 1077144, at *3 (10th Cir. March 7, 2019); *see also Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000).  "That substantial harm can be the ultimate physical injury caused by the [detainee's] illness, so long as the [detainee] can show that the more timely receipt of medical treatment would have minimized or prevented the harm." *Id.* (internal quotations omitted).  Plaintiff does not allege any facts to show that the alleged delay in medical treatment caused Ms. Eaton's injuries.  Even if Plaintiff could satisfy the objective prong, Plaintiff has not alleged sufficient facts to meet the subjective component of her deliberate indifference claim against the BOCC.  As evidenced *supra*, Plaintiff has not pled any facts to show that anyone at the OCDC knew Ms. Eaton "faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate it." *Kikumura*, 461 F.3d at 1293 (internal quotations and citation omitted).

(2)    Liability for Failure to Protect – Conditions of Confinement

Plaintiff also alleges that the conditions of confinement at the OCDC contributed to

---

[7] Plaintiff asserts in her response brief that officers at the OCDC performed resuscitation efforts on Ms. Eaton.  [Doc. No. 26 at 12].  She also asserts that it took 20 minutes for someone to call for outside medical assistance.  *Id.*  The Court on a Rule 12(b)(6) motion is limited to the facts alleged in the complaint.  *See Dubbs v. Head Start, Inc.,* 336 F.3d 1194, 1201 (10th Cir. 2003).

the BOCC's failure to protect Ms. Eaton from attempting suicide. Plaintiff relies on the Fourteenth Amendment, which provides that no state shall deprive a person of life, liberty, or property, without due process of law. As a general rule, "'state actors are liable only for their own acts, and not the violent acts of third parties.'" *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1279 (10th Cir. 2003) (*quoting Armijo v. Wagon Mound Pub. Sch.,* 159 F.3d 1253, 1260 (10th Cir. 1998)). Thus, a state's "failure to protect an individual against private violence … does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago County Dep't of Soc. Services*, 489 U.S. 189, 197 (1989). There are two exceptions: the special relationship doctrine and the state-created danger theory. *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012). "The special relationship doctrine applies 'when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual.'" *Id*. (*quoting J.W. v. Utah*, 647 F.3d 1006, 1011 (10th Cir. 2011) (internal quotations omitted)). "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney*, 489 U.S. at 199-200. The violation of that duty may form the basis for a substantive due process claim.

"Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, the Eighth Amendment standard provides the benchmark for such claims." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) (internal citation omitted). The Eighth Amendment imposes duties on jail officials "who must provide humane conditions of confinement; [jail] officials must ensure that inmates receive

adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (*quoting Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)); *see also Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999) (jail officials are "responsible for taking reasonable measures to insure the safety of inmates").

To prevail on a claim under the Eighth Amendment, an inmate must show he was "incarcerated under conditions posing a substantial risk of serious harm" and that the jail officials were deliberately indifferent to the inmate's health or safety.  *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001).  Jail officials cannot be found liable under this standard unless they subjectively knew of and disregarded an excessive risk to the detainee's health or safety.  *Farmer,* 511 U.S. at 837.  Assuming the truth of the allegations in Plaintiff's Amended Complaint, Plaintiff has not stated a plausible claim that any jail official was deliberately indifferent to Ms. Eaton's health or safety.

As evidenced *supra*, the Amended Complaint contains no allegations that any OCDC staff had knowledge that Ms. Eaton would attempt suicide.  A pretrial detainee cannot be placed in a cell that is specially modified and monitored to guard against attempts at self-harm if officials are unaware of the specific risk.[8]  Further, overcrowding alone is insufficient to establish a constitutional violation.  *Rhodes v. Chapman*, 452 U.S. 337, 348-349 (1981).  Additionally, no court has recognized a constitutional right to suicide

---

[8] Plaintiff's reliance on the DOJ report, describing conditions of the OCDC in April 2007, is of no consequence here.  Plaintiff alleges that the DOJ recommended that "*suicidal* detainees" be placed in cells where grates and fixtures had been removed or modified. [Doc. No. 18 at ¶ 42(B)] (emphasis added).

screening and prevention protocols.  *Cox v. Glanz*, 800 F.3d 1231, 1250 (10th Cir. 2015).

        (3)     Existence of a Custom or Policy

      To establish a § 1983 claim against the BOCC, Plaintiff must establish that both a constitutional violation occurred and an official policy caused the violation.  *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013).  "Proving a single incident of unconstitutional conduct is not enough.  Rather, a plaintiff must show that the incident resulted from an existing, unconstitutional policy attributable to a municipal policymaker."  *Nielander v. Board of County Comm'rs*, 582 F.3d 1155, 1170 (10th Cir. 2009) (*quoting Oklahoma City v. Tuttle*, 471 U.S. 808, 823-824 (1985)).  In the absence of an official policy, a political unit may still be liable based on an informal custom amounting "to a widespread practice that … is so permanent and well settled as to constitute a custom or usage with the force of law."  *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010).

      Plaintiff does not allege that any of the purported constitutional violations are attributable to any formally adopted policy of the BOCC.  To allege the existence of an unconstitutional custom, Plaintiff asserts that there was a similar incident involving a male inmate who used a ventilation grill to hang himself.  She does not allege when this previous suicide occurred, whether OCDC staff were aware of a specific risk that the male inmate would commit suicide, or how the two incidents are similar.  Further, two incidents of suicide or attempted suicide by hanging does not establish a continuing, widespread, and persistent pattern of misconduct.  *See, e.g.*, *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1125 (10th Cir. 2008) (at best, the evidence showed that the

school district was aware of several discrete problems involving sexual harassment, which raised an issue of negligence but not deliberate indifference); *Andrews v. Fowler*, 98 F.3d 1069, 1075-1076 (8th Cir. 1996) (two prior incidents of misconduct with sexual overtones in regard to an officer does not establish a "persistent and widespread" pattern of misconduct); *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 780 (7th Cir. 2014) ("The bare fact that other inmates attempted suicide does not demonstrate that the jail's policies were inadequate, that officials were aware of any suicide risk posed by the policies or that officials failed to take appropriate steps to protect [the pretrial detainee].").

Further, Plaintiff's assertion that there have been "44 deaths in the recent past" does not establish a persistent and widespread pattern of misconduct. [Doc. No. 18 at ¶ 30]. Plaintiff does not plead any facts to show that these 44 deaths are sufficiently similar to Ms. Eaton's attempted suicide, the period in which these alleged deaths occurred, or if the same alleged unconstitutional conduct caused any of the 44 deaths.

Plaintiff also alleges that the BOCC failed to adequately train and supervise OCDC employees who are responsible for detainees' medical needs. The Supreme Court has recognized a failure to train as a potential means of establishing a policy or custom for § 1983 liability. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Consistent with *City of Canton*, the Tenth Circuit has acknowledged that municipal liability "may be based on injuries caused by a failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010) (*quoting City*

*of Canton*, 489 U.S. at 388-391). In other words, Plaintiff must allege facts that show "'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers … can reasonably be said to have been deliberately indifferent to the need' for additional training." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) (*quoting City of Canton*, 489 U.S. at 390).

Plaintiff alleges that the BOCC failed to properly train and supervise staff constituting "a deliberate indifference to the known substantial risk of serious harm" to Ms. Eaton. [Doc. No. 18 at ¶ 56]. Further, Plaintiff alleges that the BOCC "deliberately failed to appropriately select, screen, train and supervise their staff in a constitutionally permissible manner." *Id.* at ¶ 65(C). Further, Plaintiff generally alleges that the BOCC failed to properly train or supervise OCDC employees concerning follow-up efforts after a pretrial detainee fails to report for a mental health evaluation appointment. However, Plaintiff fails to allege specific deficiencies in training and supervision, or explain how Ms. Eaton's attempted suicide could have been avoided with different training and supervision. "Mere conclusory allegations that an officer or group of officers are unsatisfactorily trained will not 'suffice to fasten liability on the city.'" *Bark v. Chacon*, Case No. CV-10-1570-WYD-MJW, 2011 WL 1884691, at *3 (D. Colo. May 18, 2011) (unpublished) (*quoting City of Canton*, 489 U.S. at 390-391). In this case, the allegations in the Amended Complaint are conclusory recitations of the elements required to establish § 1983 liability. The Court finds that the lack of specific factual allegations to support this theory of recovery renders the Amended Complaint subject to dismissal for failure to state a plausible claim for relief against the BOCC.

### C. State law claim

Having found that the BOCC and Whetsel are entitled to dismissal on Plaintiff's § 1983 claims, the Court declines, pursuant to 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction over Plaintiff's state law claim for negligence. It is well established that "[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (internal quotations omitted). Accordingly, Plaintiff's negligence claim (Count Three) against the BOCC and Whetsel should be remanded to state court.

### 3. Armor and John Doe 1-10

Plaintiff is required to serve each defendant with a summons and a copy of the Amended Complaint. *See* FED. R. CIV. P. 4(c)(1). If service is not made within 90 days after filing of the Amended Complaint, the Court may dismiss the action against any unserved defendant without prejudice. FED. R. CIV. P. 4(m). Here, nine months have elapsed since Plaintiff filed her Amended Complaint adding Armor and nine John Does as defendants in this action, and service upon them has not been completed. Thus, Plaintiff's failure to complete proper service on Armor and the John Does within the time limits prescribed by Rule 4(m) is grounds for dismissal of her claims against them in the absence of a justification for the failure. *Jones v. Frank*, 973 F.2d 872, 873-874 (10th Cir. 1992).

The preliminary inquiry under Rule 4(m) is to determine whether Plaintiff has shown good cause for her failure to timely effect service. *Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995). On January 4, 2019, the Court entered an order directing

Plaintiff to show cause why the action should not be dismissed without prejudice as to Armor and the John Does for failure to effect service. [Doc. No. 28]. Plaintiff filed a response [Doc. No. 29] indicating that she filed a separate action against Armor in state court on June 26, 2018 (Oklahoma County District Court Case No. CJ-2018-3476), and that action was removed by Armor to federal court on July 17, 2018 (W. D. Okla. Case No. CIV-18-690-D). However, the Court dismissed the action against Armor on January 4, 2019, noting that the action was duplicative of the instant case. [W. D. Okla. Case No. CIV-18-690-D, Doc. No. 20]. Plaintiff offers no explanation for why service has not been made on Armor in the instant action. Further, Plaintiff has informed the Court of no effort she has made to discover the names of the John Does. Accordingly, Plaintiff has not shown good cause for her failure to serve Armor and the John Does. Nevertheless, the Court must still consider whether a permissive extension of time to serve is warranted in light of several factors. *Espinoza*, 52 F.3d at 841-842.

Specifically, the Tenth Circuit has noted that a permissive extension may be warranted "if the applicable statute of limitations would bar the refiled action," or where "policy considerations might weigh in favor of granting a permissive extension of time …." *Id*. at 842; *see also* FED. R. CIV. P. 4(m) advisory committee's note (1993). The statute of limitations governing Plaintiff's § 1983 cause of action is two years. *Meade v. Grubbs,* 841 F.2d 1512, 1522 (10th Cir. 1988). More than two years have elapsed since Ms. Eaton's attempted suicide; therefore, if the case against Armor and the John Does is dismissed without prejudice, Plaintiff's claims could be barred by the applicable statute of limitations. This factor alone does not support a finding of good cause for a failure to effect

timely service. *See, e.g., May v. Okla. Dep't of Corrections*, Case No. 99-6267, 2000 WL 633244, at *2 (10th Cir. May 17, 2000). In the nine months since the Amended Complaint was filed, the record does not reflect that Plaintiff has taken any steps to identify and serve the John Does or Armor. Further, Oklahoma's savings statute may provide Plaintiff with an additional period of time to bring an action against Armor and the John Does if Plaintiff's claims against them are dismissed pursuant to Rule 4(m). *See* OKLA. STAT. TIT. 12, § 100; *see also Grider v. USX Corp.*, 847 P.2d 779, 783 (Okla. 1993) (noting that OKLA. STAT. tit. 12, § 100 "applies to extend the limitations period regardless whether the dismissed suit was filed in state court or federal court sitting within the state of Oklahoma."); *Williams v. City of Guthrie*, 109 Fed. Appx. 283, 286 (10th Cir. Sept. 8, 2004) (unpublished)[9] (applying Oklahoma's savings statute to a § 1983 claim filed in federal court). Therefore, this factor counsels toward dismissal.

Further, the record does not contain evidence suggesting evasion of service of process by Armor or the John Does, nor does there appear to be any policy consideration that warrants granting Plaintiff an extension of time. Accordingly, Plaintiff's claims against Armor and the John Does are dismissed without prejudice pursuant to FED. R. CIV. P. 4(m).

### 4.    CHM

On May 7, 2019, the Court entered an order directing Plaintiff to show cause why the action should not be dismissed without prejudice as to CHM for failure to effect service.

---

[9] Unpublished opinion cited pursuant to FED. R. APP. P. 32.1(a) and 10TH CIR. R. 32.1.

[Doc. No. 30].  Plaintiff filed a response [Doc. No. 31] stating that it was her understanding that Armor was the contractor for the medical services at the OCDC during the period covering Plaintiff's claims.  Plaintiff stated she had no objection to the Court dismissing CHM without prejudice.  *Id.*  Accordingly, Plaintiff's claims against CHM are dismissed without prejudice pursuant to FED. R. CIV. P. 4(m).

## CONCLUSION

For the foregoing reasons, the Motions to Dismiss Amended Complaint filed by the BOCC and Whetsel [Doc. Nos. 21, 22] are GRANTED.  Counts One and Two of the Amended Complaint against the BOCC and Whetsel are dismissed without prejudice.  Finding no other independent basis for federal jurisdiction, Plaintiff's negligence claim (Count Three) against the BOCC and Whetsel is remanded to the District Court of Oklahoma County, Oklahoma.  The Court also finds that Plaintiff need not be granted leave to further amend her pleading.[10]   Further, Plaintiff's claims against Armor, John Doe 1-10, and CHM are dismissed without prejudice pursuant to FED. R. CIV. P. 4(m).

---

[10] "Where a plaintiff does not move for permission to amend the complaint, the district court commits no error by not granting such leave." *Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1238 n. 4 (10th Cir. 2013) (*citing Calderon v. Kansas Dep't of Soc. & Rehab. Services*, 181 F.3d 1180, 1185-87 (10th Cir. 1999)); *Glenn v. First Nat'l Bank*, 868 F.2d 368, 371 (10th Cir. 1989).  Further, a plaintiff making "such a request 'must give adequate notice to the district court and to the opposing party of the basis of the proposed amendment.'"  *Hall v. Witteman*, 584 F.3d 859, 868 (10th Cir. 2009) (*quoting Calderon*, 181 F.3d at 1186-87).

**IT IS SO ORDERED** this 23rd day of May 2019.

_____

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE